**BENTON COUNTY REMONSTRATORS (Dennis Foster, David Geswein, et al.), Appellants–Petitioners,**

**v.**

**BOARD OF ZONING APPEALS OF BENTON COUNTY; Brian Martin; David Martin; North Fork Farms, LLC; Bruce Buchanan; and Connie Frey, Appellees–Respondents.**

**No. 04A03–0811–CV–559.**

Court of Appeals of Indiana.

May 15, 2009.

John T. Casey, Rensselaer, IN, Attorney for Appellants.

Alan S. Townsend, Bryan H. Babb, Daniel P. McInerny, Suzanna Hartzell–Baird, Bose McKinney & Evans, LLP, Indianapolis, IN, Attorneys for Appellees.

## OPINION

MATHIAS, Judge.

The Benton County Remonstrators ("Remonstrators") appeal from a dismissal of their verified petition, complaint, and application for writ of certiorari, declaratory judgment and judicial review. The Remonstrators appeal and argue:

1. Whether the trial court erred when it rescinded an order appointing a special judge;

2. Whether the special judge erred when it denied Remonstrators' motion for change of venue;

3. Whether the Remonstrators have standing to challenge the Board of Zoning Appeals' decision; and

4. Whether the trial court erred when it determined that inadequate notice was provided to landowners.

Brian Martin, David Martin, and North Fork Farms, LLC ("North Fork") cross appeal, alleging that the verification by Remonstrators' attorney of the appeal is not allowed under Indiana Code section 36–7–4–1003(a). We affirm in part, reverse in part, and remand to the trial court for proceedings consistent with this opinion.

## Facts and Procedural History

In early December 2006, North Fork filed an application with the Indiana Department of Environmental Management ("IDEM") to develop a confined animal feeding operation ("CAFO"). In late February 2007, North Fork filed two Applications for Special Exception with the Benton County Board of Zoning Appeals ("BZA"). The applications were named the East and West Applications, respectively. The East Application sought permission to place a CAFO on land owned by Bruce A. Buchanan and Connie Frey. The West Application sought permission to place a CAFO on land owned in part by Bruce and Virginia Buchanan and in part by Steve Jobst.

Following allegations of conflicts of interest among the BZA, the BZA filed a complaint for declaratory judgment with the Benton Circuit Court to review the conflict of interest issue, the validity of the BZA procedure for determining and dealing with conflicts of interest, and any violation of the Open Door Law. The Benton Circuit Court approved of and confirmed the actions of the BZA. The Remonstrators appealed. In an unpublished memorandum decision, we determined that the declaratory judgment was premature in that the BZA and the Remonstrators failed to show that an actual, justiciable controversy existed at the time they requested a declaratory judgment.[1] We or-

1. *In Re Membership of Benton County Bd. of* *Zoning Appeals,* No. 04A03–0711–CV–531,

dered the trial court to dismiss the declaratory judgment.

On March 10, 2008, the BZA granted both of North Fork's applications, the East and West Applications. On April 8, 2008, the Remonstrators filed a verified petition, complaint and application for writ of certiorari, declaratory judgment and judicial review ("Petition") appealing both applications. The Remonstrators attached their original remonstrance to the Petition as an exhibit. The original Remonstrance defines the Remonstrators as a group of Benton County residents; however, only Dennis Foster and Dave Geswein signed the remonstrance, and no other list of additional remonstrators was included. Also, counsel for the Remonstrators signed the Petition on behalf of the Remonstrators.

On April 9, 2008, the Honorable Rex W. Kepner recused himself and appointed the Honorable Jeryl Leach as Special Judge. On April 25, 2008, Judge Kepner rescinded his prior order appointing Judge Leach and appointed the Honorable John Rader because Judge Leach was not listed as an option for appointment as special judge under the applicable local rule.

On May 6, 2008, the Remonstrators filed a Motion for Change of Judge. On May 8, 2008, Judge Rader entered an order appointing a panel of judges from which the parties would strike ("Order"). On May 9, 2008, the Order was file-stamped by the clerk's office. On May 12, 2008, the Remonstrators' counsel left on vacation, allegedly without receiving the Order. Between May 12, 2008 and May 21, 2008, the Remonstrators' counsel received a message from his office that the order had been received. On May 15, 2008, counsel for North Fork sent the Remonstrators' counsel an email asking if he had stricken anyone from the panel. On May 22, 2008, North Fork's counsel sent a second email asking who had been stricken because he had not received anything from the court.

On May 21, 2008, the Remonstrators' counsel returned from vacation. On May 23, 2008, the Remonstrators' counsel filed a strike. On May 30, 2008, North Fork filed a Motion to Strike or, in the alternative, Notice of Striking, arguing that the Remonstrators' notice of striking was untimely. On June 2, 2008, the BZA filed its strike. On June 19, 2008, the Remonstrators filed a response, also raising, for the first time, the issue of the validity of Judge Kepner's appointment of Judge Rader. Judge Rader determined that the Remonstrators failed to timely strike and resumed jurisdiction of the case.

██ On July 24, 2008, the Remonstrators filed a Motion to Amend Pleadings with an Amended Petition. On August 26, 2008, the trial court held a hearing on various issues. On October 7, 2008, the trial court denied the Remonstrators' motion to amend and dismissed its Petition. The Remonstrators now appeal.

### I. Verification by Attorney

██ North Forks first argues that the Remonstrators' Petition is invalid because it was not properly verified since it was only signed by the Remonstrators' counsel. An appeal from a decision of the BZA is initiated by filing a verified petition for writ of certiorari:

> Each decision of . . . the board of zoning appeals is subject to review by certiorari. Each person aggrieved by a decision of the board of zoning appeals . . . may present, to the circuit or superior court of the county in which the premises affected are located, a verified petition setting forth that the decision is illegal

in whole or in part and specifying the grounds of the illegality.

Ind.Code § 36-7-4-1003(a) (2006). In order for a reviewing court to acquire jurisdiction under Indiana Code section 36-7-4-1003(a), the petition must be verified. *Williams–Woodland Park Neighborhood Ass'n v. Bd. of Zoning Appeals*, 638 N.E.2d 1295, 1297–98 (Ind.Ct.App.1994). "The essential purpose of a verification is that the statements be made under penalty for perjury." *Austin v. Sanders*, 492 N.E.2d 8, 9 (Ind.1986).

■ Our supreme court has directed that Indiana Trial Rule 11(B) is the verification standard by which a petition "for review of the action of an administrative body" should be judged. *Id.* Indiana courts consider the BZA an administrative body. *See Evansville Outdoor Adver., Inc. v. Bd. of Zoning Appeals*, 757 N.E.2d 151, 158 (Ind.Ct.App.2001), *trans. denied* (referring to the BZA of Evansville and Vanderburgh County as an "administrative body"). " 'It must be emphasized that the board, as an administrative body, presumably expert in the land use problems of its particular jurisdiction, has wide discretion in the granting or denying of zoning variances.' " *Metro. Bd. of Zoning Appeals v. Rumple*, 261 Ind. 214, 220, 301 N.E.2d 359, 363 (1973) (quoting *Metro. Bd. of Zoning Appeals v. Standard Life Ins. Co.*, 145 Ind.App. 363, 251 N.E.2d 60, 61 (1969)).

In verifying a petition for certiorari review, according to Trial Rule 11(B):

> it shall be sufficient if the subscriber simply affirms the truth of the matter to be verified by an affirmation or representation in substantially the following language:
>
> > "I (we) affirm, under the penalties for perjury, that the foregoing representation(s) is (are) true.
> >
> > (Signed) _____ "

Trial Rule 11(B). Trial Rule 11(B) complies with the Indiana Code language for verified pleadings. In a definition applicable "to the construction of all Indiana statutes," " '[v]erified,' when applied to pleadings, means supported by oath or affirmation in writing." Indiana Code § 1-1-4-5 (2008).

Our supreme court emphasized in *Austin* that verification need only substantially comply with Trial Rule 11(B). 492 N.E.2d at 9. Indeed, Trial Rule 11(B) itself requires only that the verification be "in *substantially* the following language." (emphasis added). As Trial Rule 11(B) makes clear, the standard for "any civil or special statutory proceeding" is the same. Strict compliance with the certiorari review statute requires only substantial compliance with Trial Rule 11(B). *Bd. of Zoning Appeals of Porter County v. Lake County Trust Co.*, 783 N.E.2d 382, 385 (Ind.Ct.App.2003), *trans. denied.*

■ As our supreme court stated, a belief that a representation is true "may arise from personal observation, from sight or from sound, from information derived from others, or as the result of a logical conclusion from other known facts." *Austin*, 492 N.E.2d at 10. Here, the Remonstrators' counsel could have rested his belief that the representations were true on the basis of someone else's personal knowledge and reasonable inferences based on that personal knowledge. Therefore, the trial court properly determined that the Petition can be verified by an attorney.

## II. Special Judge Appointment

■ The Remonstrators next argue that the original trial judge, Judge Kepner, did not have the authority to rescind his order appointing Judge Leach as special judge. This argument is without merit. When Judge Kepner recused himself pursuant to

Trial Rule 79(C), the selection of the special judge fell under Trial Rule 79(H), which provides that, "[i]n the event . . . a judge disqualifies and recuses under Section (C), the appointment of an eligible special judge shall be made pursuant to a local rule approved by the Indiana Supreme Court[.]" Benton County Local Rule TR04–TR–10 states:

> The following Judges may be appointed to serve as Special Judge in the Benton Circuit Court in Civil or Juvenile cases:
>
> Elected Judge in the following Courts: Clinton Circuit Court; Fountain Circuit Court; Montgomery Circuit Court; Tippecanoe Circuit Court; Warren Circuit Court; Carroll Circuit Court; White Circuit Court.

At all times pertinent to this appeal, Judge Leach was judge of the Newton Circuit Court, which is not one of the courts provided for in the local rule. Judge Rader is judge of Warren Circuit Court, which is one of the courts provided for in the local rule.

Pursuant to Trial Rule 79(H), "a person appointed to serve as special judge under a local rule must accept jurisdiction in the case unless the appointed special judge is . . . ineligible for service under this rule." Because Judge Leach was not available for appointment under the local rule, he was ineligible for service and could not accept the appointment. Judge Kepner realized that he had appointed Judge Leach in error and rectified the situation by appointing Judge Rader.

Even assuming that Judge Kepner only retained jurisdiction over emergency matters, we conclude that the mistaken appointment of a judge ineligible to accept the appointment would certainly constitute an emergency matter. The trial court did not err in rescinding its order appointing Judge Leach as special judge and properly appointing Judge Rader.

## III. Change of Judge

■■■ The Remonstrators next argue that Judge Rader abused his discretion by resuming general jurisdiction after determining that the Remonstrators had failed to timely strike from a panel of judges following their motion for change of judge. The issue is whether the trial court properly vacated its prior order granting the Remonstrators' motion for change of judge and resumed jurisdiction of the case after finding that the striking of the judges had not been timely completed as required under Indiana Trial Rule 79. A ruling on a motion for change of judge rests within the sound discretion of the trial court and will be reversed only upon a showing of an abuse of that discretion. *Reynolds v. State*, 575 N.E.2d 28, 30 (Ind.Ct.App.1991), *trans. denied.*

■■■ North Fork argues that the Remonstrators failed to raise the argument of when the clerk mailed the Order before the trial court; therefore it should be waived. We agree. "A party generally waives appellate review of an issue or argument unless the party raised that issue or argument before the trial court." *GKC Ind. Theatres, Inc. v. Elk Retail Investors, LLC*, 764 N.E.2d 647, 652 (Ind.Ct.App. 2002); *see also Hoagland v. Town of Clear Lake Bd. of Zoning Appeals*, 873 N.E.2d 61, 65 n. 2 (Ind.Ct.App.2007). Had the Remonstrators raised this issue at the trial court level, then the parties would have had an opportunity to develop a record and provide the court with evidence as to when the clerk mailed the panel. The Remonstrators cannot now raise such a fact-sensitive issue without raising it first before the trial court and giving the other parties an opportunity to address the issue and fully develop a record for appeal. Therefore,

we conclude that the Remonstrators have waived this argument.

 Waiver notwithstanding, Trial Rule 79(F) controls the selection of a special judge in this case. Trial Rule 79(F) (2003 & Supp.2008) states:

(F) Selection by Panel. In the event a special judge is not selected under Sections (D) or (E) of this rule, this section shall be used for the selection of a special judge.

(1) *Naming of Panel.* Within two (2) days of deciding that a special judge must be appointed under this section, the judge before whom the case is pending shall submit a panel of three persons eligible under Section J to the parties for striking. In the event the judge before whom the case is pending is unavailable to submit the panel, the regular judge of the court where the case is pending shall submit the panel to the parties.

(2) *Striking From Panel.* In an adversary proceeding, each party shall be entitled to strike one judge from the panel. In an *ex parte* proceeding, the sole party shall be entitled to strike one judge from the panel. The moving party shall be entitled to strike first, and shall have seven (7) days from the day the clerk mails the panel to the parties to strike. The nonmoving party, or the Clerk of the Court in an *ex parte* proceeding, shall have seven (7) days from the date of the first strike to make the final strike.

(3) *Failure of Nonmoving Party or Clerk to Strike.* If the nonmoving party, or the Clerk of the Court in an *ex parte* proceeding, fails to strike within the time required by subsection (2), the moving party shall have seven (7) days from that time to make the final strike.

(4) *Failure of Moving Party to Strike.* If the moving party fails to strike under either subsection (2) or (3) within the time limits required by those subsections, the judge who submitted the panel shall resume jurisdiction of the case.

(5) *Appointment of Special Judge.* The judge who submitted the panel shall appoint the judge remaining on the panel as special judge in the case.

After the clerk file-stamped the Order on May 9, 2008, the first evidence presented as to the receipt of the Order is North Fork's counsel's email to the Remonstrators' counsel on May 15, 2008. Even if we were to make the assumption that the clerk mailed the Order, North Fork's counsel received the Order, and sent an email to the Remonstrators' counsel on the same day, May 15, 2008, the Remonstrators' strike on May 23 would still have been untimely. The Remonstrators, as the moving party, were required to strike within seven days of the mailing of the Order by the clerk, and having failed to do so, the trial court was required, under Trial Rule 79(F)(4), to resume jurisdiction of the case. The trial court did not abuse its discretion when it resumed jurisdiction of the case following the Remonstrators' failure to timely strike from the panel of judges.

## IV. Standing

 The Remonstrators next argue that the trial court erred when it determined that they did not have standing to challenge the BZA's decision. Specifically, at issue is whether the Remonstrators were aggrieved persons pursuant to statute. "A person must be 'aggrieved' by a board of zoning appeals's decision in order to have standing to seek judicial review of that decision." *Bagnall v. Town of Beverly Shores*, 726 N.E.2d 782, 786 (Ind.2000)

(citing I.C. § 36–7–4–1003(a)). To be aggrieved, the Remonstrators must experience a substantial grievance, a denial of some personal or property right, or the imposition of a burden or obligation. *See id.* Generally, the BZA's decision must infringe upon a legal right of the petitioner that will be enlarged or diminished by the result of the appeal and the petitioner's resulting injury must be pecuniary in nature. *Id.* The Remonstrators must show some special injury other than that sustained by the community as a whole. *See id.*

The trial court determined that "the Benton County Remonstrators have not shown that it [sic] owns property or has a legal interest affected by the Board's decision. It is found that Benton County Remonstrators is [sic] not an aggrieved person within the meaning of the statute. There is no allegation in the Petition for Writ that the representative individuals listed are aggrieved persons." Appellant's App. p. 7.

■■■ The Remonstrance sets forth that the Remonstrators include adjoining landowners, individuals who live in close proximity to the proposed CAFO, and residents who have general objections to the projects because of the potential effects on public health and the welfare of the community. Appellant's App. p. 49. Only the first group has alleged a special harm and an injury that is pecuniary. The last two groups failed to show any specific injury that would affect them as a group, would not be sustained by the community as a whole, and was pecuniary in nature.

However, the adjoining landowners can validly claim to be an aggrieved party. While being an adjoining landowner is not necessary to be considered an aggrieved party, such a determination does make the determination of whether a party is aggrieved easier. Also necessary is a showing that the adjoining landowners will receive some special injury other than injuries sustained by the community as a whole that will result in a pecuniary harm.

The Remonstrators argue that a CAFO would devalue adjoining properties. As we have noted in the past, "[i]t is generally held that the owner of real estate is assumed to possess sufficient acquaintance with it to estimate the value of the property although his knowledge on the subject might not be such as would qualify him to testify if he were not the owner." *State v. Hamer,* 199 N.E. 589, 595, 211 Ind. 570, 585 (1936). In this case, the opinion of the adjoining landowners as to the devaluation of their own property is sufficient to constitute a special injury and establish a potential pecuniary harm.

For all of these reasons, the trial court erred in concluding that the Remonstrators who were adjoining landowners did not have standing to file the Petition.

## V. Notice to Landowners and Parties

■■■ Lastly, the Remonstrators argue that the trial court abused its discretion when it dismissed their petition for failure to provide notice to all of the necessary landowners and parties. Pursuant to Indiana Code section 36–7–4–1005(a)(2) (2006):

If the petitioner is not the applicant for the use, special exception, or variance and is a person aggrieved by the decision of a board of zoning appeals as set forth in section 1003 of this chapter, the petitioner shall have a notice served by the sheriff of the county on:

(A) each applicant or petitioner for the use, special exception, or variance; and

(B) each owner of the property that is the subject of the application or petition for the use, special exception, or variance.

The aggrieved party must also provide notice of the petition to certain parties pursuant to Indiana Code section 36–7–4–1005. The Indiana Supreme Court has held that "[t]he court does not gain jurisdiction over the petition until the petitioner serves notice upon all adverse parties" as required by Indiana Code section 36–7–4–1005. *Bagnall*, 726 N.E.2d at 785. In *Bagnall*, the court noted: "To comply with the statute, a petitioner must file, with the clerk, notices to adverse parties contemporaneously to the filing of the writ petition." *Id.* "[S]trict compliance with the requirements of the statute governing appeals from decisions of boards of zoning appeals is necessary for the trial court to obtain jurisdiction over such cases." *Id.*

The trial court noted that the Remonstrators failed to provide the required statutory notice to the owners of the property that was subject to the West Application despite providing notice to the owners of the property that was subject to the East Application. The trial court then dismissed the entire Petition rather than simply the issues related to the West Application.

The trial court failed to obtain jurisdiction over the West Application because of the Remonstrators' failure to comply with the statute, and the trial court did not err in dismissing this part of the Remonstrators' petition. However, the Remonstrators did comply with statute as to the East Application, and the trial court erred in dismissing the Petition as to the East Application.

## Conclusion

The trial court did not err in determining that the Remonstrators' counsel may verify the Remonstrators' Petition. The original judge did not err when he rescinded his order appointing a special judge who was ineligible under local rule and appointed an eligible special judge in his place. The Remonstrators waived the issue of when the clerk mailed the panel of judges for strike when they failed to raise the issue before the trial court. The trial court erred in determining that all of the Remonstrators lacked standing to challenge the BZA decision, when the Remonstrators who were adjoining landowners had sufficiently pleaded a special harm that would result in a pecuniary injury. Finally, the trial court erred in dismissing the Remonstrators' Petition as it related to the East Application but did not err in dismissing the Remonstrators' Petition as it related to the West Application.

Therefore, we remand this case to the trial court for further proceedings consistent with this opinion concerning the East Application.

RILEY, J., and KIRSCH, J., concur.